IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ALPHONSO BRISCOE,**

            Petitioner,

      v.                                CASE NO. 18-3300-SAC

**SHANNON MEYER,**

            Respondent.

### MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2254. Petitioner challenges his conviction of two counts of attempted first-degree murder and one count of criminal possession of a firearm imposed in the District Court of Saline County, Kansas. The court has reviewed the record, the responsive pleading, and the traverse, and enters the following order.

### Nature of the petition

Petitioner seeks relief from his convictions, alleging he was denied the effective assistance of counsel, that the exclusion of expert testimony denied him due process and a fair trial, that there was insufficient evidence to support the convictions, and that cumulative error violated his rights to due process and a fair trial.

### Procedural background

On December 18, 2007, petitioner was convicted in the District Court of Saline County, Kansas, of two counts of attempted first-degree murder and one count of criminal possession of a firearm. On April 9, 2008, he was sentenced to a prison term of 620 months.

On September 17, 2010, the Kansas Court of Appeals (KCOA) affirmed the convictions. *State v. Briscoe*, 238 P.3d 763 (Table), 2010

WL 3731182 (Kan. Ct. App. 2010)(unpublished opinion), *rev. denied*, Nov. 8, 2010.

On August 24, 2011, petitioner filed a motion for post-conviction relief under K.S.A. 60-1507. The district court denied relief on July 15, 2014. Petitioner appealed, and the KCOA affirmed the denial. *Briscoe v. State*, 412 P.3d 1039 (Table), 2018 WL 911416 (Kan. Ct. App. 2018)(unpublished opinion), *rev. denied*, October 30, 2018.

Petitioner commenced this action on December 20, 2018, and proceeds on his second amended petition.

### Factual background

The Kansas Court of Appeals (KCOA) summarized the facts of petitioner's case as follows:

> This criminal case arose from an ill-fated New Year's Eve party held at the Stiefel Theatre in Salina. Briefly summarized, the party was organized by James Burse, a music promoter, and Dana Crowder, a music producer. Burse had known Briscoe since childhood. Crowder had known Briscoe for about 10 years. Crowder's fiancée, Mary Taylor, was at the party and observed Briscoe and another man on the stage displaying gang signs. She testified that Crowder attempted to eject Briscoe from the party whereupon a fight broke out.
>
> According to Crowder, during the disturbance Briscoe shouted an obscenity and struck him in the head. Crowder chased after Briscoe and grabbed him. Antwon Perry, who also knew Crowder and Briscoe, intervened by putting Briscoe in a choke hold before releasing him. Briscoe then left the building. As a result of the disturbance, Burse stopped the party and the revelers began to leave.
>
> Later, as the hosts left the theater in the early morning hours, Crowder was confronted by Briscoe and three other individuals. Briscoe wanted to fight Burse but Crowder tried to walk past the group. According to Crowder, Briscoe took out a gun and put it in Crowder's face. As Crowder walked to the ticket booth he heard shots. Perry, who was in the vicinity, was struck in the heart by a bullet which resulted in about 20 days of hospitalization. Another eyewitness, Rico Hudson, who also knew Briscoe, witnessed him fire a handgun about four times in the direction of

> Crowder and saw Perry on the ground. Taylor generally corroborated these accounts and also identified Briscoe as the individual who confronted the group outside the theater and began shooting.
>
> Briscoe was later interviewed by Investigator Andrew Meek. Briscoe admitted attending the party at the theater until the party closed down. As he was walking out the door about 1:30 a.m. he claimed that Crowder and others attacked him but he left the area and did not return. Briscoe denied he was present at the time of the later shooting. He claimed that after he left the theater he went to his girlfriend's house where he drank gin until about 3 a.m.

*Briscoe v. State*, 412 P.3d 1039 (Table), 2018 WL 911416 at *1-2 (Kan. Ct. App. 2018)(unpublished opinion).

Additional facts are incorporated in the discussion of petitioner's claims.

### Standard of review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations omitted).

The court presumes the correctness of the fact-finding by the

state court unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance").

These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and they require that state court decisions receive the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A habeas petitioner generally must exhaust available state court remedies before seeking federal habeas relief. "A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

The presentation of a claim "requires that the petitioner raise in state court the 'substance' of his federal claims." *Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015). A federal court can excuse exhaustion "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).

The procedural default doctrine provides an additional limit to

review in habeas corpus cases. A federal habeas court may not review "federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule" – unless the prisoner demonstrates either cause for the procedural default and resulting prejudice or that the failure of the federal court to review the claim will result in a fundamental miscarriage of justice. *Davila v. Davis*, 137 S.Ct. 2058, 2064-65 (2017); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Likewise, where a petitioner fails to present a claim in the state courts, and would now be procedurally barred from presenting it if he returned to state court, there is an anticipatory procedural bar which prevents the federal court from addressing the claim. *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007). As in the case of other procedurally defaulted claims, a petitioner's unexhausted claims barred by anticipatory procedural default cannot be considered in habeas corpus unless he establishes cause and prejudice for his default of state court remedies or a fundamental miscarriage of justice. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

To demonstrate cause for a procedural default, petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably

available to [petitioner.]" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). A petitioner also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

A procedural default also may be excused if a petitioner can show that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. To proceed under this exception, a petitioner "must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). A petitioner seeking relief under a defaulted claim and asserting a claim of innocence must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006)(quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## Discussion
**Claims of ineffective assistance of counsel**

Petitioner first seeks habeas corpus relief on the claim that he was denied the effective assistance of counsel.

At the outset, the court notes that petitioner presents six claims of ineffective assistance in his petition, namely, (1) counsel failed to cross-examine Mary Taylor; (2) counsel failed to investigate the expert witness's qualification; (3) counsel failed to obtain independent scientific testing on material recovered at the crime scene or seized from petitioner's residence; (4) counsel failed to ensure he was in possession of all discoverable evidence prior to trial; (5) counsel failed to thoroughly investigate or interview

essential witnesses; and (6) cumulative error. (Doc. 19, pp. 3 and 6.)

However, only four claims of ineffective assistance were presented in his action under K.S.A. 60-1507. These claims are: (1) counsel failed to cross-examine witness Mary Taylor; (2) counsel failed to impeach witness Shawn Delforge with a prior conviction; (3) counsel failed to properly qualify Dr. Lyman as an expert; and (4) cumulative error.

Review in habeas corpus of petitioner's claim of ineffective assistance of counsel is limited to the claims presented in state court unless he can establish grounds for his procedural default of the remaining claims. As explained, this showing requires him to show cause and prejudice or a fundamental miscarriage of justice. Petitioner has not made any argument to excuse his procedural default.

Claims alleging ineffective assistance are analyzed under the standards established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, "a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Review of claims of ineffective assistance of counsel presented in habeas corpus is deferential to the state courts. *See Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that

counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (internal quotation marks and brackets omitted).

First, the court agrees with respondent's assertion that petitioner has not raised the claim alleging ineffective assistance in the failure to impeach witness Shawn Delforge. This claim does not appear in the petition, and it is abandoned.

Next, petitioner alleges his counsel was ineffective in failing to cross-examine prosecution witness Mary Taylor. Petitioner raised this claim in his action under K.S.A. 60-1507.

The KCOA summarized Ms. Taylor's testimony at trial as follows:

> Taylor testified that at the concert she noticed a man onstage who she described as "wired." When she asked her fiancé, Crowder, who the man was, Crowder responded, "[O]h, I grew up with him, his name is Alphonso [Briscoe]." Later in the evening, Taylor testified that Briscoe and another individual got on the stage and "started throwing up gang signs." When Crowder attempted to escort Briscoe out of the theater, Briscoe started "punching after [him]."
>
> At the end of the evening, Taylor testified she heard Briscoe's brother tell Crowder that Briscoe "want[ed] [him] to bring the heat, which mean[t] gun." And, when Taylor, Crowder, and a group of others exited the theater later that morning, Taylor said the man who "was jumping around the club, the one who swung at my fiancé, the one that was acting a fool, Alphonso," came up to them and started shooting."

*Briscoe v. State*, 2018 WL 911416, *3.

Following this testimony, the prosecution asked Ms. Taylor about her written statement to law enforcement and a diagram of the crime scene upon which she had made notes. The defense then asked the trial court for a bench conference where they discussed whether the materials in question had been provided by the prosecution. The

prosecution replied that it had provided them and produced two e-mails to establish this. The trial court then ordered a recess to allow defense counsel to review the material. Following the recess, the state sought to introduce the statement and diagram, and the defense objected. The prosecution withdrew Ms. Taylor's statement, and the trial court allowed the admission of the diagram without her notes. Counsel then made a strategic decision not to cross-examine her because it might simply confirm her testimony.

In his motion under K.S.A. 60-1507, petitioner argued that if the defense had cross-examined this witness, they could have shown inconsistencies in the testimony of the state's witnesses which would have undermined their credibility. At the hearing conducted in that matter, defense counsel testified that after reviewing the materials, he had probably discussed the matter with petitioner and decided that it would be better not to cross-examine the witness to avoid reinforcing her testimony.

The trial court found the failure to recognize the omission of the materials was below a standard of reasonableness but determined that there was no showing of prejudice.

Petitioner appealed. The state did not cross-appeal from the finding that the defense acted below a standard of reasonableness, and the KCOA therefore considered only whether petitioner was prejudiced by the failure to cross-examine. Petitioner supported his claim of prejudice by identifying five points cited by defense counsel in closing argument that were not developed by cross-examination.

The KCOA noted that counsel had presented the points identified by petitioner when it cross-examined other witnesses and during its closing statement. While it conceded that cross-examining Ms. Taylor might have been more effective, it stated that it also was possible that the witness could have explained the challenges if cross-examined. It also noted that the jury heard from three other eyewitnesses who identified petitioner as the shooter and concluded that the failure to cross-examine Ms. Taylor did not result in a reasonable probability of a different verdict.

The state courts applied the correct standards here and this court has no ground to disturb their decision that petitioner was not denied the effective assistance of counsel by the failure to cross-examine Ms. Taylor.

*Qualification of the expert witness*

Petitioner also argues he received ineffective assistance of counsel when counsel failed to properly qualify Dr. Michael Lyman as an expert witness. In opening statements, the defense stated that it intended to produce an expert to testify on the police procedures followed in the investigation and how those procedures impacted the investigation and the evidence offered at trial. Dr. Lyman stated that he was asked to review the case materials and offer an assessment of any inadequacies of the investigation.

The trial court denied the defense request to allow Dr. Lyman to testify as an expert, stating:

> "[T]he defense is seeking to offer the testimony of Dr. Lyman as an expert witness on the issue of police investigative procedures. The biggest concern I have is looking at his CV, or curriculum vitae, [is] that ... for about the last past 18 years he has worked as a professor, as opposed to actually in law enforcement. There has also been no evidence that he has offered that he's familiar with the standard of practice is in a community the size of Salina for investigations.... From '86 to '89 he worked also as an instructor. So, that's taking us back 21 years that he has been in the field of being an instructor, as opposed to actually being involved in law enforcement.
>
> "It's also a concern of the Court that ... this witness testified he was not even familiar with the ATF and F.B.I. procedures relating to the gun residue which seems, to the Court, to be something relatively basic and certainly one of the issues in this court."

*State v. Briscoe*, 2010 WL 3731182, at *3.

As shown, petitioner challenged this in his action under K.S.A. 60-1507 as a claim of ineffective assistance, based on the unsuccessful attempt to qualify Dr. Lyman as an expert witness. The trial court rejected that argument, finding that the decision whether to designate Dr. Lyman as an expert lay within the discretion of the court and did not reflect deficient performance by counsel. It noted that counsel had used the expert as a consultant, had walked the crime scene with him, and had used his guidance to elicit testimony from prosecution witnesses regarding deficiencies in the investigation, such as the failure to obtain fingerprint evidence and to test for gunshot residue.

The KCOA first noted that it had affirmed the trial court's decision rejecting Dr. Lyman's testimony on direct appeal. It next considered petitioner's argument that defense counsel provided ineffective assistance by failing to properly prepare for trial by

verifying that Dr. Lyman was qualified as an expert. The KCOA reviewed Dr. Lyman's experience in criminal justice, which included experience in arrests and criminal proceedings as a law enforcement officer, authorship of multiple textbooks and articles on criminal justice topics, his position as a professor of criminal justice, and his participation in 100 cases as a consultant and as an expert witness on 51 occasions. It found that in light of Dr. Lyman's qualifications and the fact that the trial court here was the first to find him unqualified to testify as an expert, defense counsel had no reason to expect that he would not be allowed to testify as an expert. The KCOA also agreed that petitioner suffered no prejudice, stating that trial counsel had used cross-examination effectively to present challenges to the criminal investigation.

Because this analysis applies the legal standard established in *Strickland* and is a reasonable interpretation of the facts, petitioner is not entitled to relief.

*Cumulative error*

Finally, petitioner asserts a claim of ineffective assistance of counsel based upon cumulative error. Both the trial court and the KCOA rejected this claim on the ground that only a single error by counsel had been established, and a single error may not be used to assert cumulative error. This analysis is correct. *See Ellis v. Raemisch*, 872 F.3d 1064, 1090 (10th Cir. 2017)(stating "there must be more than one error to conduct cumulative-error analysis."). Accordingly, petitioner is not entitled to relief on his claim of

ineffective assistance of counsel. The state courts applied the correct legal standard and reasonably applied it to the facts.

**The exclusion of Dr. Lyman as an expert witness**

Petitioner next claims the state court denied him the right to present a defense by refusing to allow Dr. Lyman to testify. In petitioner's direct appeal, the KCOA cited state case law for the principle that a decision to qualify an expert witness lies in the sound discretion of the trial court and will not be overturned unless there is an abuse of discretion. *State v. Briscoe*, 238 P.3d 763, 2010 WL 3731182, at *2 (Kan. Ct. App. Sep. 17, 2010)(citing *State v. Johnson*, 190 P.3d 207, 214 (Kan. 2008)).

Respondent argues that petitioner is not entitled to relief in habeas corpus, as his claim on direct appeal was based on state law, and because he presents a challenge to the trial court's evidentiary ruling rather than a claim of constitutional error. The court agrees.

It is settled that a federal habeas court may grant relief based on a state court evidentiary ruling only if it "render[ed] the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Elliot v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001) (citation omitted).

In this case, as discussed earlier, the decision of the trial court did not prevent the defense from using Dr. Lyman's guidance to cross-examine prosecution witnesses about the procedures used in the investigation of the shootings and to highlight failures to comply with procedure. Likewise, the trial court's decision to reject Dr.

Lyman as an expert witness was an act within its discretion, and it was upheld by the KCOA. The trial court's ruling did not render the petitioner's trial fundamentally unfair, and petitioner is not entitled to relief on this claim.

**The sufficiency of the evidence**

Petitioner claims there was insufficient evidence to support his conviction. The standard for such a challenge is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The KCOA rejected this argument, stating:

> Briscoe's sole argument on this issue is that *only* three witnesses identified him as the shooter. Briscoe maintains that these witnesses may have falsely identified him based on improper motives. One of the witnesses had known Briscoe over 10 years and they had been friends. Another witness was a social friend of Briscoe. Briscoe claims "[t]he possibility of a false identification by these three witnesses based on improper motive is evident." Because Briscoe provides no explanation of this statement, the proposition certainly is not evident to us. In any event, we do not reweigh the credibility of the witnesses.

*State v. Briscoe*, 2010 WL 3731182 at *3.

The KCOA cited the correct standard and reasonably applied it to the facts. The record shows that petitioner was identified by multiple eyewitnesses, one of whom had known him for years. He is not entitled to relief on this claim.

**Cumulative error**

Finally, petitioner asserts that cumulative error operated to deny him due process and a fair trial. "[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (brackets and internal quotation marks omitted) (quoting *Brown v. Sirmons*, 515 F.3d 1072, 1097 (10th Cir. 2008)). "Under cumulative error review, a court merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) (quotation marks omitted). But "cumulative-error in the federal habeas context applies only where there are two or more actual constitutional errors." *Jackson*, 805 F.3d at 955 (quotation marks omitted).

In this case, the only error identified is the failure of defense counsel to recognize that they had not received all the materials relevant to the testimony of witness Mary Taylor. That single error is insufficient to support a claim of cumulative error.

**Conclusion**

For the reasons set out, the court concludes petitioner is not entitled to habeas corpus relief. Because the court enters a decision adverse to petitioner, it must consider whether to issue a certificate of appealability.

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253.

Having considered the record, the court finds petitioner has not made a substantial showing of constitutional error in his trial and declines to issue a certificate of appealability.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is dismissed and all relief is denied. No certificate of appealability will issue.

IT IS FURTHER ORDERED petitioner's motion to amend to substitute James Skidmore, the acting warden of Lansing Correctional Facility as the respondent (Doc. 36) is granted. The clerk of the court shall modify the docket accordingly.

DATED:  This 7th day of March, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge